The next case on this morning's docket is the case of People of the State of Illinois v. Nathaniel Fleming. We have Mr. John Gleason for the appellant. Yes, we do. And we have Ms. Sharon Shanahan for the appellee. And Mr. Gleason, once you get settled, well, just go right ahead. Looks like you're prepared. Thank you. Thank you, Your Honors. This appeal is not tailor-made for the defense, but I have a few points that I think are important and would ask the Court to consider. They all relate to ineffective assistance of counsel. The State does not argue too vociferously with the allegation that the performance of the defense into play. Prejudice cannot be established. So, unless the Court wants to start with questions, I'll just start with an allegedly inconsistent statement by one of Nathaniel Fleming's witnesses that the State tried to use as, and did use, as substantive evidence. The defendant's, Nathaniel Fleming's, girlfriend, Rosina Malone, was called by the State, and she testified that the day after the shooting, she spoke with Nathaniel Fleming. And he told her a little bit about what happened the previous evening, but there was nothing about a shooting, according to Rosina Malone. But then the State called a witness, a sergeant, a detective with the Alton Police Department, who testified that he had interviewed Rosina Malone, my client's girlfriend. And Rosina Malone had told him that during that conversation the day after the shooting. Nathaniel Fleming had told her that he had shot someone in Alton. So that was the prior, the alleged prior inconsistent statement. And the State used that prior inconsistent statement as substantive evidence. And the trial attorney did not object to that. And who offered, was there a jury instruction offered on that, obviously? Yes, there was a jury instruction. And the State offered it, and the defendant didn't object? The defense attorney didn't object? Right. Now the State, correct me if I'm wrong, but the State seems not to argue that this prior inconsistent statement could not be used, could not properly be used as substantive evidence. The statement was recorded by the police, you know, Rosina Malone's statement to the police was recorded. But the subject matter of the statement was not something of which Rosina Malone had personal knowledge. So in order to qualify it to be used as substantive evidence, she had to have personal knowledge of the subject matter. And just reporting what somebody else told her about something does not qualify as personal knowledge under the case law. So I go into all of the case law in my brief. If I could just say briefly that a case called People v. Harvey, First District, 2006, a witness cannot satisfy the personal knowledge requirement by merely testifying as to what a third party claims to have done. Rather, the witness must have firsthand knowledge of the facts underlying the third party's declarations. Nobody is saying that Rosina Malone had firsthand knowledge of this shooting call. So it was wrong for the defense attorney not to object to the use of this alleged prior inconsistent statement by Rosina Malone as substantive evidence. It could not properly be used as substantive evidence. But didn't the defendant admit that he called Malone and told her that he had shot someone? Well, he certainly made a statement to the police, and it was videotaped. And he said that he had phoned Rosina Malone. And, of course, even in the videotape, he even told the police that he had shot someone. But the thing is, my client— Why wouldn't that make this harmless error, then, if it was used for the wrong purpose? I mean, do you think the jury can parse out the difference that much that it would be something other than harmless error? Yes. I'm saying it was not harmless error because, you know, my client, Daniel Fleming, had an explanation that he gave at trial as to why he said what he said to the police during that videotaped interrogation, and that it was because he was relying on some really bad advice from his erstwhile co-defendant. When they were both in the jail the night before, my client spoke with the police and gave a reason for why he told the police what he told them and testified at trial that, no, he did not have anything to do with the shootings. That inconsistent statement from Rosina Malone becomes more important. You know, when you phone your girlfriend and confess to a shooting, that's something that's done totally without any kind of coercion or pressure or misguided legal advice or the rest. I think that's the type of thing that could have quite a bit of weight with the jury, where he phones his girlfriend and just tells her with no pressure of any sort that he had shot someone. Well, I would—I could follow that if he hadn't himself admitted that he called her and told her that. Once again, though, he says—he testifies at trial—that he told all this to the police because of this very bad advice from his erstwhile co-defendant, and that he didn't really do any of those things. He testifies at trial that he really didn't do any of the things that the police did. If I could jump to—can I ask how much time I have remaining? Three minutes? Let me jump to my last point at that time, back to an earlier point. This one relates to the prosecutor's closing argument, and the defense attorney did not object. At the trial, Nathaniel Fleming had an alibi witness, a young lady named Tomasina Pfeiffer, and Tomasina Pfeiffer testified that she was with Nathaniel Fleming at the home of Nathaniel's sister in Alton from 8 p.m. to 11.30 p.m. on the night of the shooting, and the shooting apparently happened around 11.30. Now, during the closing argument, the state's attorney says that Nathaniel Fleming's work records contradict Tomasina Pfeiffer's alibi testimony, and that the work records do not match Tomasina's testimony. But no work records of Nathaniel Fleming were admitted into evidence at the trial, or offered for that matter. So really, the state's attorney had no business saying that there were these work records that contradict the alibi testimony, and that's just not right. We don't know what those records say, really. We haven't seen the records. We certainly haven't seen the record there. That was an improper way for the state's attorney to try to convince the jury that Tomasina's alibi testimony should be discounted, disregarded. The other thing I would like to talk about is the cross-examination of a young man named Brandon Smith. Nathaniel Fleming and some other people were figured prominently at this trial. And the gun used in these shootings was found underneath a chair in Brandon Smith's bedroom. And nobody says, Brandon Smith, that ain't going to do with the shooting. But the state calls him in an apparent attempt to tie Nathaniel Fleming to the gun that was used in the shooting. So the state questions him as follows. Question. So at no time did Nate Fleming tell you that he was putting a gun under the chair. See, this is trying to tie Nathaniel Fleming to the gun. Answer. Not that I recall. Question. You don't recall telling the police officers that? Answer. I don't remember. I told you it was like a year ago. Question. You don't recall telling them that this morning? Answer. I didn't talk to the police this morning. And the state never called a police officer or anybody else to perfect this impeachment. Never called a police officer or anybody else to testify that Brandon Smith indeed had told the police that Nathaniel Fleming had told him that he was putting a gun under his chair. So the defense attorney definitely should have objected to that imperfect testimony. It was trial by insinuation, as the court said, with no legitimate tie between Nathaniel Fleming and that gun under the chair. If there are no further questions, I thank you. Thank you. We'll have the opportunity to rebut. Ms. Shanahan. You have conceded that the testimony should not have been used? Yes, not been used. Substantively. Yes. May I please report? I took defendant to say that I had, I didn't argue that defense counsel's performance was not subpar and like that was in some way admitting that defense counsel's performance was subpar. And that's certainly not the strictly standard. I don't have to prove anything about defense counsel's performance if there is no prejudice. Since I can establish everything through prejudice, I don't need to go any farther into the strictly analysis. Yes, I do agree that Ms. Malone's statement could not be used substantively. However, I would note that the use, the substantive use of her statement would not have provided any greater benefit than its use as impeachment. Ms. Malone admitted in trial and in her statement that defendants told her he had shot someone. The only difference between what she said at trial and what she said at the shooting was when the shooting occurred. So the impeachment goes solely to Ms. Malone's credibility. So standard impeachment accomplishes the same thing that that substantive use was. So admitting it substantively obviously did not harm the defendant in any way. The defendant says that substantive use allowed an inference that the defendant shot the victim, which was harmful to the defendant. But as you've already noted, the defendant admitted in his statement, he admitted that he called Ms. Malone the day after the shooting and told her that he shot somebody. And since the jury could and no doubt did consider virtually the same evidence when they listened to a defendant's confession, this statement could not have prejudiced the defendant, even if it was taken substantively. The Harvey case that defendants cited to support actually ultimately concluded that the error in that case was harmless error. It says that inadmissible evidence can be harmless error if the alleged erroneously admitted evidence did not prove an element of the crime not established by other properly admitted evidence. Now, assuming that in this particular case, we have the question of, did the defendant call his girlfriend the day after the shooting and tell her that he shot someone? That can come in through this, her statement to the police. It can also come, can and did come in through the defendant's statement to police. So there is absolutely nowhere this defendant questioned whether or not his statement to police was properly admitted. So since it came in as other than properly admitted evidence, even on the case cited by defendant, the error is harmless. As far as use of standard impeachment, defendant relies on people versus Johnson, which held that the admission of testimony that doesn't damage or contradict the state's case is error. But since Johnson, there's been our Supreme Court has had occasion to consider what kind of testimony is inconsistent. And the Supreme Court of People versus Flores said that a witness's prior testimony does not have to directly contradict the testimony given at trial in order to be considered inconsistent. Inconsistency may be found in evasive answers, silence, or changes in positions. Ms. Malone's testimony at trial is nothing if not evasive. I have here my notes of her testimony. She said that the defendant called her and told her what he did in Reggie's car when the three of them were in the car a couple of days before. He didn't tell her what happened right before they came over on Sunday. And then the question says, you didn't tell the police what he told you? Answer. I told them what I just told you. What did he tell you happened on Sunday night? I just told you. Is that all he told you? Yes. And did you tell the police anything else? Answer. For that day, no. Did you tell the police that Nate had told you what he did with the other two young men on Sunday night before he came to your house? No, he didn't tell me that on Monday. Did he tell you that any other time? And here's probably the most confusing statement of all. Before anything happened, you never told the police that he told you something else? I told the police what he told me before Sunday. Yes. And what was that? I told them that he told me he had shot somebody. So somehow, before the defendant shot somebody, he told Miss Malone that he shot somebody. If that's not confusing, if that's not evasive, I don't know what is. Her statement to Sergeant Simmons is quite clear-cut. Her statement to Sergeant Simmons is, Miss Malone told the defendant, told him that the defendant, Sergeant Simmons testified that Miss Malone told him that the defendant called her on Monday and said that he had shot someone in the arm. So when a witness is evasive, changes her position, says she can't remember, anything like that, then her testimony under People v. Leonard, her testimony may be considered damaging. And so it certainly was permissible under ordinary rules of impeachment. Moreover, it is harmless error in this case, since it does come in under defendant's confession. And so I don't think that there's any question that there was no harm here. And since there is no prejudice to defendants, there is no ineffective assistance of counsel. I just have to comment on something that when asked about, since the defendant's statement said the same thing, defense counsel said that, kind of indicated that because the defendant got up there and testified that he didn't say what he said in his statement, that that kind of made everything okay. But the defendant's version of the events of the night is just rambling, inconsistent, unbelievable. He claimed he went to see Miss Pfeffer on her break, but then he said he went to Smith's house on the break and did not see Pfeffer, but he called her. And he said he called her at 8 o'clock after he got off work. He said he called Stagel to pick him up to go see his sister's car because she was using it. But then he claimed his sister was home all night. He said he thought that telling the police that he shot the gun out of the car at people would get him out of jail. Now this is a young man who had a scholarship to go to college next year. He claimed that he told police that he found the gun and shot it in the air near the victims because Everidge told him to tell that story. He said he spoke to Everidge for only 10 minutes, but admitted that he could have talked to him all night long. He said he decided to agree with everything the police said, even though it was not true. And he admitted that he knew he was under arrest for first degree murder, but claimed that he did not know why he was being kept in a cell. He said he did not tell him. He said he did not dream that somebody got shot. What's also interesting is the contrast between that statement and when you listen to his confession he gave to the police. Defendants can videotape confession, which is part of the record on appeal, and I would strongly It just meshes perfectly with Jesse Bryant, the victim's girlfriend, with Josh Miller, who found the gold trailblazer that left the scene, with Loretta James, the lady that owned the gold trailblazer, with Brad Everidge, whose version of the entire night is almost identical to all the way down here. There is overwhelming evidence of this man's guilt. In addition to all the other legal arguments on the specific issues, defense cannot have been prejudiced for this reason. Thank you, Ms. Shanahan. Mr. Gleason? Unless the court has questions for me, I'm going to stand on my initial argument and ask the court to reverse judgment due to ineffective assistance and remand for a new trial. Thank you, Mr. Gleason. We're going to take a brief recess. Thank you.